Motion Denied.

filed is that the referees heard the allegations and proofs of the
parties as to their respective claims, and disallowed the defend-
ant's claim, which being in excess of fifteen dollars, the appeal
should be allowed.

The motion to dismiss is denied.

———•———

PAUL APPENZELLAR *vs.* HENRY C. CONRAD, Associate Judge, Resi-
dent in Sussex County, THOMAS COLEMAN DU PONT, LEWIS
L. DUNHAM, FRANK M. WILLIAMS, SIDNEY H. HENRY and
PAUL E. WILSON.

*(July* 11, 1916).

Head notes applicable to the facts and law of this case will be found
among those to the case of *Clendaniel v. Conrad et al., 3 Boyce* 555.

CURTIS, CHANCELLOR, PENNEWILL, CHIEF JUSTICE, and
BOYCE, RICE and HEISEL, ASSOCIATE JUDGES, sitting.
*Marvel, Marvel* and *Wolcott* for petitioner.
*Robert H. Richards* and *Charles W. Cullen* for respondents.
Supreme Court, June Term, 1916.

Rule to show cause why a writ of prohibition should not
issue, No. 6, June Term, 1916.

Original petition by Paul Appenzellar for a writ of prohibi-
tion against Henry C. Conrad, Associate Judge, resident in Sussex
County, and others.   On rule to show cause why the writ should
not issue.   Rule discharged, and petition dismissed.

On the thirty-first day of March, 1911, the Governor of the
State of Delaware approved an Act which had theretofore been
passed by the General Assembly of the State of Delaware, enti-
tled "An Act to amend an Act entitled, 'An Act providing a
general corporation law' (being *chapter* 273, *Volume* 21, *Laws of*

*Delaware*, as amended) by authorizing the organization of boulevard corporations," which said last mentioned Act is *chapter* 189, *Volume* 26, *Laws of Delaware* (*article* 10, *chapter* 65, *Rev. Code* 1915).

On the sixteenth day of October, 1911, Thomas Coleman du-Pont, Lewis L. Dunham, Frank M. Williams, Sidney H. Henry, and Paul E. Wilson, under authority of said last mentioned Act, filed in the office of the Secretary of State of the State of Delaware articles of association, whereby was created a corporation by the name of "Coleman du Pont Road, Incorporated," which, by its said articles of association, disclosed its object and purpose.

The corporation organized the same day, and adopted a resolution, for which see *Clendaniel v. Conrad, et al.*, *3 Boyce*, 555, 83 *Atl.* 1036, *Ann. Cas.* 1915B, 968, and proceeded to make surveys, etc., as stated in that case, passing through lands now of the said Paul Appenzellar. On the eighteenth day of March, 1916, the said corporation, having previously given the notice prescribed by said Act, presented a petition to the said Associate Judge for the purpose of condemning the right of way for its said boulevard through the lands of the said Appenzellar, wherein the said corporation, *inter alia*, did aver as shown in the *Clendaniel case*, and in which said petition the said corporation did likewise aver that it "intends in good faith to complete all of the said several public utilities, for which it is necessary to take said land, as aforesaid, and to operate the same; or cause the same to be compltted and operated."

At the time of filing said petition, and subsequent to the filing thereof, the said Appenzellar, through his counsel, challenged the jurisdiction of the said Associate Judge to entertain said petition or take any action thereon, upon the ground that the statute by which said proceeding is authorized, to wit, *article* 10, *chapter* 65, *Rev. Code* 1915, is unconstitutional and void and therefore conferred no jurisdiction upon said Associate Judge in the premises. This objection of the said counsel for said Appenzellar was overruled by the said Associate Judge and the motion of the said Appenzellar's counsel to dismiss the said petition was denied and the said Associate Judge adjourned further action on said petition

Statement.

until the eighth day of April, 1916, for further proceedings thereon according to law.

Subsequently, on the fifth day of April, 1916, the said Appenzellar, through his counsel, filed a petition in this court, duly verified, in substance as follows:

\* \* \*   *First.*   That the said Paul Appenzellar is and since, etc., has been seised in his demesne as of fee of that certain tract or parcel of land situated, etc.

*Second.*   That Thomas Coleman du Pont, Lewis L. Dunham, Frank M. Williams, Sidney H. Henry and Paul E. Wilson claim and pretend to be a boulevard corporation of the State of Delaware, by the name of Coleman du Pont Road, Incorporated, by virtue of a paper writing filed in the office of the Secretary of State of the State of Delaware, on, etc., purporting to be 'articles of association of Coleman du Pont Road, Incorporated,' a copy whereof is, etc.

*Third.*   That on, etc., the said, etc., claiming to be such corporation as aforesaid, deposited in the office of the Secretary of State aforesaid a pretended survey of a section or portion of the route of a pretended boulevard claimed to be contemplated by the said alleged corporation, extending through, over and across the tract or parcel of land aforesaid, a copy of which pretended survey is, etc.

*Fourth.*   That the said, etc., assuming to be such corporation as aforesaid, intend to acquire a strip of land extending at a width of two hundred (200) feet throughout its length from a point at or near, etc., and across the aforesaid tract or parcel of land of the said Paul Appenzellar.

That the said, etc., assuming to be such corporation as aforesaid, claim to be vested under the pretended Act of the General Assembly of the State of Delaware, hereinafter referred to, with the power of eminent domain as to all of the strip of land aforesaid.

*Fifth.*   That the said, etc., assuming to be such corporation as aforesaid, in execution of their intention to acquire the strip of land aforesaid, are seeking to condemn a portion of the tract or parcel of land of which Paul Appenzellar is seized as aforesaid, such portion being two hundred (200) feet in width and extending almost the entire length of the said farm.

That to this end and for this purpose, the said, etc., assuming to be such corporation as aforesaid, did on, etc., present a petition to the Honorable Henry C. Conrad, the Associate Judge of the State of Delaware, resident in Sussex County aforesaid, for the appointment of five freeholders to view the tract or parcel of land aforesaid and to assess the damages which the said Paul Appenzellar would sustain by reason of the said pretended boulevard passing through, taking and using the same.

That at the time of the presentation of said petition, the said Paul Appenzellar, by and through his counsel, moved the said Honorable Henry C. Conrad, Associate Judge, as aforesaid, to dismiss the said petition and to refuse to assume jurisdiction to appoint freeholders as prayed for therein, but that the said Associate Judge refused said motion and assumed jurisdiction of the premises, under and by virtue of a pretended Act of the General Assembly. of the State of Delaware, hereinafter referred to, and adjourned the cause to, etc., on which day he proposes to appoint freeholders as prayed for.   A copy of the said petition and of the motion to dismiss the same and of the order of

the said Associate Judge refusing said motion are hereto attached marked, etc.

*Sixth.* That the filing of the paper writing, purporting to be articles of association of etc., as aforesaid, and the depositing of the pretended survey of a section or portion of the route of the pretended boulevard as aforesaid, and the presenting of the petition for condemnation as aforesaid, were done by the said, etc., under color of a pretended Act of the General Assembly of the State of Delaware entitled "An Act to amend an Act entitled 'An Act providing a general corporation law' (being *chapter 273, Volume 21, Laws of Delaware,* as amended) by authorizing the organization of boulevard corporations," which the said, etc., allege was passed by the General Assembly of the State of Delaware, at its biennial session held in the year, etc., and allege was approved by the Governor of said State on, etc., and were without any other warrant or authority.

That the Honorable Henry C. Conrad, Associate Judge as aforesaid, has assumed jurisdiction in the matter of the petition for condemnation aforesaid by virtue of the provisions of the said pretended Act of the General Assembly of the State of Delaware and under no other warrant or authority whatever. The said pretended Act of the General Assembly of the State of Delaware, *chapter 189, Volume 26, Laws of Delaware,* is made a part of this petition.

*Seventh.* That the said, etc., allege that they, acting as such corporation as aforesaid, intend to use in the construction of a road for vehicular travel, and its accessories, to be deeded to the State of Delaware, as in said pretended Act is provided, a small portion of the aforesaid two hundred (200) feet wide strip of land, extending from a point at or near, etc., and extending through and across said tract or parcel of land of Paul Appenzellar as aforesaid, which small portion is to extend throughout the length of said strip of land at a width of forty feet.

That, protesting that the said small portion of the strip of land is not for, and is not intended to be devoted to, any public use, the said Paul Appenzellar alleges that the said, etc., are seeking to acquire the whole of the residue of said strip of land and to condemn various portions thereof, without having formulated any plan to devote the same to any public use, and without having determined to construct thereon any public utility, but on the contrary are seeking to acquire the aforesaid residue with only a general intention to construct thereon one or more public utilities at some indefinite future period, or to dispose of the said residue through sale of one or more of the alleged franchises of the alleged corporation in case the said Thomas Coleman du Pont and his associates shall in the future become convinced that such construction or such sale will be remunerative to them, otherwise to hold the same without any public utility thereon.

*Eighth.* That the said, etc., assuming to act as such corporation as aforesaid intend to hold for an indefinite period without devoting the same to any public use, the aforesaid residue of the strip of land aforesaid, which residue extends at a width of one hundred and sixty (160) feet from a point at, etc., and includes the portion of the tract or parcel of land of the said Paul Appenzellar which is sought to be condemned as hereinbefore set forth.

*Ninth.* That the portion of the tract or parcel of land of the said Paul Appenzellar sought to be condemned as aforesaid, is not required by the said, etc., or by the pretended corporation called Coleman du Pont Road, Incorporated, for any public use.

*Tenth.* That all the acts of the said, etc., hereinbefore set forth, and

the action of the said Henry C. Conrad, Associate Judge as aforesaid, were without warrant or authority of law.

*Eleventh.* That the said pretended Act of General Assembly of the State of Delaware is in conflict with and in contravention of the Constitution of the United States.

*Twelfth.* That the said pretended Act   *   *   *   is in conflict with and in violation of the provisions of *section* 1 of *article* 14 of the Amendments of the Constitution of the United States of America, which declares: "Nor shall any State deprive any person of life, liberty or property, without due process of law."

*Thirteenth.* That the said pretended Act   *   *   *   is in conflict with and in contravention of the Constitution of the State of Delaware.

*Fourteenth.* That the said pretended Act   *   *   *   undertook to authorize the taking of private property by eminent domain without the consent of owners thereof for private purposes.

*Fifteenth.*   *   *   *   Undertook to authorize the exercise of the power of eminent domain for uses which were not public.

*Sixteenth.*   *   *   *   Undertook to authorize the taking of private property by eminent domain against the will of the owners thereof, without requiring the same to be devoted to any public use.

*Seventeenth.*   *   *   *   Undertook to authorize the taking of land by eminent domain to be held for an indefinite period without devoting the same to any public use.

*Eighteenth.* Your petitioner further represents and states that he has been put to great expense by reason of the acts, without right, of the said, etc., and may be put to still further expense by the proposed action of the Honorable Henry C. Conrad, Associate Judge as aforesaid, in assuming jurisdiction of the petition in the condemnation proceedings aforesaid, and be involved in tedious and unnecessary litigation.

Wherefore, your petitioner prays that a writ of prohibition may issue out of and under the seal of this honorable court, prohibiting and enjoining the said Honorable Henry C. Conrad, Associate Judge of the State of Delaware, from proceeding further to hear and entertain the petition for the appointment of five freeholders to view the tract or parcel of land aforesaid, and to assess damages as aforesaid, and prohibiting and enjoining the said, etc., from further proceeding before the Honorable Henry C. Conrad, Associate Judge as aforesaid, in the premises, and for such other relief as to your Honors shall seem meet and the circumstances of the case require.   *   *   *

Upon the petition, this court by order of the Chancellor, issued a rule upon the above named defendants to show cause why the writ of prohibition prayed for should not issue, and made such rule returnable June 20, 1916, it being the regular term.

The Associate Judge filed his answer or return, which is in effect but a certification from him to this court of a true copy of the record of the said proceeding before him. The other defendants also filed their return or answer, under oath, wherein they do aver their intention, and the intention of Coleman du Pont Road,

Incorporated, to devote the whole of said boulevard, two hundred feet in width, to the public use, and do set forth a plan for the development of the whole of said boulevard, adopted by corporation, and state the manner in which the said corporation intends to devote said boulevard to the public use.

### ARGUMENT OF COUNSEL FOR PETITIONER.

All the facts embraced in this case are set forth in the record filed in this cause and are substantially similar to those in the case of *Clendaniel v. Conrad et al.*, 3 *Boyce* 549, and all the questions of law involved in this case were involved in that case where the court discharged the rule and dismissed the petition. If that decision is sustained, the court must make the same order in this case.

Attention is directed to *Secs.* 2074–2101, *Rev. Code* 1915, relative to the incorporation of a boulevard corporation.

It is not contended that it is not a legislative question whether there is a necessity for a particular public use, but it is submitted that courts exercise a supervisory power in order to keep the legislative branch of the Government within constitutional bounds. *J. B. Thayer American Doctrine Constitutional Law* 7, *Harr. L. R.* 148; *Tiedeman's State and Federal Control, etc.*, 683; note to *Grafton v. St. Paul, etc., R. W. Co.*, 22 *L. N. S.* 1, 50; *Denver, etc., Co. v. Union Co.*, 34 *Federal* 386.

The question of whether the use is a public use is a question of law. *Black Constitutional Law*, 478.

The principle of law controlling the construction of a statute authorizing the exercise of power of eminent domain is laid down by *Black on Constitutional Law*, 475.

The statute in question under any reasonable construction of its language authorizes the exercise of the power of eminent domain for purposes other than public use.

The power of eminent domain is inherent in the sovereignty, and it is for the state in the discretion of its legislative body to determine when the necessity arises which will justify calling the power into exercise, subject, to review by the courts.

The only necessity that can justify the legislative body

authorizing the use of the power of eminent domain is the public need of private land for public use.

Under the power of eminent domain, private property may be taken, without the consent of the owner, only for public use.

It is well settled that the taking of private property by eminent domain for uses other than public use constitutes the taking of the same without due process of law under the Fourteenth Amendment to the Constitution of the United States, and is contrary to the provisions of *section* 8, *article* 1 *of the Constitution of Delaware*.

The statute in question by implication and substantially by its terms declares there is no need for the exercise of the power as to the 160 feet of land not used for the public highway, because it can be withheld from public use.

The language of the Act not only does not fix any time when the lands shall be occupied by the utilities for the use of the public so as to show a present public need, but by a reasonable interpretation of its language it implies there is no public need. It authorizes the taking of the land by eminent domain and empowers the corporation to hold it for fifty years and possibly forever without use. This cannot be said to be devoting land to public use.

The Act authorizes the corporation to condemn land, a part of which is for public use (public road) and the remainder may be held without use—private use.

Where it clearly appears from the Act that the land or a part of it is not necessary for public use or that some of it is for other than public use the Act is unconstitutional. In the matter of *Albany St.* 11 *Wend.* 151.

It is respectfully submitted that the question in this case is not whether public use means use by the public or whether it means public utility, advantage or what is productive of public benefit. The mere fact that such purposes are expressed in the articles of incorporation is not conclusive. Notwithstanding that the ostensible purposes and powers of the corporation may be constitutional, if the corporation seeking condemnation is not able to show a clear, definite, present necessity for the use of the land sought to be taken, condemnation cannot be had. The cor-

poration cannot condemn land having in mind some rather vague
or indefinite purpose for its use in the future, but it must be able
to show that the land is necessary immediately and presently and
is to be used by the company immediately and presently. We
submit with all deference that the decision of the court in the
*Clendaniel case* wherein the court says, that the land must be used
within a reasonable time is erroneous. The question of reason-
ableness of time has no application to a proceeding in condemna-
tion. Such a question arises only in those cases where a corpora-
tion having secured the proper franchises for the construction of
a public work and having condemned land for that purpose, has
failed to carry out the purpose. For if the corporation can con-
demn the land without any present purpose to use the same and
is given a reasonable time within which to determine when to use
it, there is a period of time, depending upon what shall seem to
the court to be reasonable or unreasonable, that the land owner
is deprived of his property and the public is without the use or
benefit to which it is entitled.

Under the law of eminent domain, there can be no gap or
hiatus appearing at the time of taking, within which the corpora-
tion may slumber in possession of the land.

So in this case, the fact that the company may use this land
for a public use at some time in the future is not sufficient. The
existence of the public use, that is, the present necessity, must be
shown at the time of the taking. We submit that this question
is fundamental, and involves the underlying principle of the law
of eminent domain. *New Orleans Terminal Co. v. Teller*, 113 *La.
A. N.* 733; *Mich, Central R. R. Co. v. Ferguson*, 162 *Mich.* 220;
*Kansas City Ry. Co. v. Davis*, 97 *Mo.* 670; *Edgewood R. R. Co.*,
79 *Pa. St.* 257; *Sanford v. Tucson*, 8 *Ariz.* 247; *Henderson v. Lex-
ington*, 132 *Ky.* 390; 22 *L. N. S.* 20; *Fallsburg Co. v. Alexander*,
101 *Va.* 98.

The mere recital in the articles of incorporation, or in the
answer of the defendant company, is not sufficient to show that
public use which is the foundation for the expropriation. The
charter or articles of incorporation are not conclusive as to its
right to exercise the right of eminent domain. *Walker v. Shasta*

*Power Co.*, 160 *Fed.* 856, 19 *L. N. S.* 725; *Apex Transportation Co. v. Garbade*, 32 *Or.* 582; *Fallsburg, etc., Co. v. Alexander*, 101 *Va.* 98.

The fact that a corporation is public in its nature is not sufficient, of itself, to entitle it to exercise the power of eminent domain. *The Great Western, etc., Co. v. Hawkins*, 30 *Ind. App.* 557, 66 *N. E.* 765; *Niagara Falls, etc., Co.* 108 *N. Y.* 375; note to *Grafton v. St. Paul, etc., Co.*, 2 *L. N. S.* 77.

Anyone can draw a plan, and if the constitutional right of a land owner of this state can be evaded by the mere filing of a petition or the preparation of a blue print, such right is, to say the least, a tenuous one, and the supposed protection of the Constitution vain and ineffectual. *New Orleans Terminal Co. v. Teller, supra.*

The defendants admit in their answer that they do not intend to utilize the two hundred foot wide strip of land for any of the public utilities, the right to construct which was given the corporation in its charter, until after the completion of the road for vehicular travel. This admission on the part of the defendant should be sufficient to deny to them the right to take the land in question. The statute authorized the taking of so much land as may be necessary in the construction of the boulevard, and *section 2087, Revised Code* 1915, limits the width of the boulevard to two hundred feet. The corporation must show a present necessity for the condemnation of the whole strip of two hundred feet, since in fact, it is now proposing to use only forty feet thereof, viz: in the construction of the road for vehicular travel. *Piedmont Cotton Mills v. Ga., etc., Co.*, 131 *Ga.* 129; *Prather v. J. M., etc., Co.*, 52 *Ind.* 16; *Chicago, etc., Co. v. Mason*, 23 *S. Dak.* 565.

If the corporation can constitutionally take any of the land of the petitioner, it is submitted that it can only take that land which its present purposes require, and as to which it has expressed and shown a present purpose and ability to use, viz; a forty foot wide strip to be used for purposes of vehicular travel.

The court in the *Clendaniel case* assumed that the Legislature had authorized the appropriation of two hundred feet in width. We submit that such is not the case. What the Act did

authorize was the taking of so much land as might be necessary for the construction of any one or more of the utilities permitted by the Act, and set a limit of two hundred feet in width beyond which the corporation could not go.   The cases cited by the court on this point, we submit, are not controlling for the reason that they are either cases where a definite width was fixed and determined by the act, or were grants of power to municipal or other public bodies, in which case a different rule applies, than in the case of a private corporation.

To construe the act as authorizing the appropriation of two hundred feet ignores the reasonable meaning of words of the statute, and places the members of the legislative body in the light of saying that two hundred feet are necessary for the public use and you must use thirty feet for public road, the rest you may use for utilities specified or for any one of these utilities, or not use it at all.

Construing the statute according to the reasonable meaning of its language would authorize the corporation to take what was necessary not exceeding two hundred feet, and all that part outside of thirty feet it could take from time to time as it might desire to occupy for some one of the utilities mentioned upon establishing the necessity therefor, until it reached the limit of two hundred feet.

We submit that the writ of prohibition should issue against the defendants in this cause.


### ARGUMENT OF COUNSEL FOR RESPONDENTS.

One objection is based on *section* 8 of *article* 1 of the *Delaware Constitution*.   There is nowhere in the Constitution of Delaware an express prohibition of the taking of private property for private use, but this provision has generally been held to prohibit the taking of private property for private use without the consent of the owner.   The objection is based on the petitioner's claim that the uses for which the statute authorizes land to be taken are not public uses.

The taking of private property by eminent domain for private use constitutes a taking of the same without due process of

law.    1 *Lewis on Eminent Domain* (*3d Ed.*) 595; *McGehee on Due Process of Law*, 255; *Nicholas on The Power of Eminent Domain*, 242 (*Sec.* 205); *Brannon on The Fourteenth Amendment*, 163.

The questions raised in this case, have been clearly and unequivocally passed upon by the Supreme Court of this State in the *Clendaniel case*.    If it is admitted by counsel for the petitioner that the questions here are identical, with that case, it would certainly seem that such admission will necessarily impel the court to hold, without argument, that this case is ruled by the *Clendaniel case* and to enter judgment accordingly.

However, we deem it necessary to submit a brief and cite authorities in addition to the *Clendaniel case*, the sufficiency of which we urge and upon which we absolutely rely.

It is confidently contended that the uses for which the statute in question authorizes private property to be taken by eminent domain are public uses.

It is difficult, to define "a public use" when the phrase is considered in connection with the power of eminent domain. Most courts have held that the phrase is impossible of exact definition.    What are public uses today would not have been considered such a half century ago and what will be considered public uses a decade or two from the present would probably not be so considered today.    Industrial progress and changes in civilization necessitate changes in the meaning and application of this phrase.    *Nichols on The Power of Eminent Domain*, *p.* 246 (*Sec.* 207); *Attorney General v. Williams*, 174 *Mass.* 476; *Tuttle v. Moore*, 64 *S. W.* 585.

Courts and text writers have taken two views of the meaning of this phrase.

One is, that public use means use by the public, or by that class of the public which is in a position to avail itself of the use.

The other is, that public use means public utility, advantage or what is productive of public benefit.

*Lewis on Eminent Domain*, prefers the former view; Mills the latter.

The latter view may be termed the broader one and is the one adopted by the Supreme Court of the United States.    5 *Enc.*

of U. S. Supreme Court Reports, 762; Clark v. Nash, 198 U. S. 360; Strickland v. Highland Boy, etc., 200 U. S. 527; U. S. v. Gettysburg E. R. Co., 160 U. S. 668.

The broader view of the meaning of the term "public use" has been adopted and established as the law of the State of Delaware. Whiteman, etc., vs. R. R. Co., 2 Harr. 514.

This case has never been modified or overruled by the Supreme Court of this State and is the established law of this State on the question of eminent domain and a public use. The case is found cited and treated as an authority upon eminent domain. See also the later case of Wilson v. R. R. Co., 5 Del. Ch. 524; Mills on Eminent Domain (2d Ed.), page 107 (Sec. 21).

The use for which the statute in question authorizes land to be taken by eminent domain is that of a boulevard. Burridge v. Detroit, 42 L. R. A. 684, in determining the applicability of "Act No. 264, Laws 1887, fixing liability of municipalities for defects in ways, including sidewalks, defines explicitly a boulevard.

That the power of eminent domain may be delegated to private corporations for the construction of highways is a proposition which needs no argument nor citation of authority for support. Upon analysis of the definition of a boulevard, as contained in the statute, it is found that the elements thereof consist of, (1) a road for the use of vehicles; (2) electric railways; (3) telegraph and telephone lines; (4) pipe lines for the distribution of oil, water and other commodities; (5) pipe, conduit and pole lines for the distribution of electric current for all purposes, necessarily including lighting, heating, power, etc.; (6) pipe lines for the distribution of steam and for the distribution of gas, which may be used for heating, lighting, or any other purpose desired; (7) the beautification of said boulevard by trees, grass, flowers, and shrubbery.

Considering these elements individually, it is respectfully submitted that each one of them has been time and again declared by courts in most of the states of the Union to be, per se, a public use, for which the power of eminent domain may be exercised.

Hare's American Constitutional Law, Vol. 1, page 339, 15 Cyc. 585 et seq.

Arguments.

[1]    Roads: *West River Bridge Co. v. Dix*, 6 *How.* 507; *Speck v. Kenoyer*, 164 *Ind.* 431; *San Mateo Co. v. Coburn*, 130 *Cal.* 631; *Bankhead v. Brown*, 25 *Ia.* 540, etc.

Turnpikes: *Bachus v. Lebanon*, 11 *N. H.* 24; *Tidewater Co. v. Coster*, 18 *N. J. E.* 518; *State v. Maine*, 27 *Conn.* 641, etc.

It has been held in this state in "*Hickman's Case*," 4 *Harr* 580, that the legislature can constitutionally authorize the exercise of the power of eminent domain for the purpose of establishing private roads.

[2]    Electric railways: Railroads and railways, without distinction as to motive power, have, since their introduction, been considered public highways and public uses.

*Whitman v. R. R. Co.*, 2 *Harr.* 514; *Wilson v. R. R. Co.*, 5 *Del. Ch.* 524.

And other Delaware cases which, without deciding expressly, have recognized electric railways to be public uses for which land may be condemned. *Cooper v. R. R. Co.*, 8 *Del. Ch.* 454; *Wil. City Ry. v. Wil. & Brandywine Springs Ry. Co.*, 8 *Del. Ch.* 470; *Wil. v. Gordon Heights Ry. Co.*, 8 *Del. Ch.* 202; *Williams v. Odessa & Middletown Electric Ry. Co.*, 7 *Del. Ch.* 340; *Johnson v. P., B. & W. R. R. Co.*, 62 *Atl.* 86, etc.

[3]    Telegraph and Telephone lines:

It is well established that the telegraph is a public use and the business of telegraphy a public business. *Postal Tel. Co. v. Oregon Short Line*, 65 *Pac.* 735; *Prather v. Western Union*, 85 *Ind.* 501; *York Telephone Co. v. Keesey*, 5 *Pa. Dist. 366*; *Western Union v. Penna. R. R. Co.*, 123 *Fed.* 33; *Atty. Gen. v. Telephone Co.*, 6 *Q. B. D.* 244, etc.

[4]    Pipe lines for the distribution of oil, water and other commodities:

*Thoroughgood v. Georgetown Water Co.*, 9 *Del. Ch.* 84, 77 *Atl.* 720 (723); *Jacobs v. Clear Water Supply Co.*, 220 *Pa. St.* 388; *Transportation Co. v. Oil Co.*, 5 *W. Va.* 382; *Johnston v. Gas Co.*, 4 *Sadler* (*Pa.*) 215; *R. R. Co. v. Greely*, 17 *N. H.* 47.

[5]    Pipe, conduit and pole lines for the distribution of electric current for all purposes, necessarily including lighting, heating power, etc.: *Jones v. Electric Co.*, 125 *Ga.* 618; *Rockingham*,

*etc., v. Hobbs,* 72 *N. H.* 531; *Shasta Power Co. v. Walker,* 160 *Fed.* 856, *etc.*

[6]   Pipe lines for the distribution of steam and for the distribution of gas, which may be used for heating, lighting, or any other purpose desired: *Bloomfield Natural Gas Light Co. v. Richardson,* 63 *Barbour* 437; *LaHarp v. Gas Co.,* 76 *Pac.* 448, *etc.*

[7]   The beautification of said boulevard by trees, grass, flowers and shrubbery: *Matter of Curran,* 38 *App. Div. (N. Y.)* 82; *Matter of Bushwick Ave.,* 48 *Barbour* 9; *Matter of Clinton Ave.,* 57 *App. Div. (N. Y.)* 166, affirmed in 167 *N. Y.* 624.

Can it be seriously urged that the above uses which, individualized, have been recognized as public uses, for which private property may be taken by eminent domain, lose any of their essential characteristics by being combined as constituent elements of a highway, called "Boulevard," which, from its definition, is disclosed to be a comprehensive instrumentality for the transportation of persons and things and the transmission of intelligence, amidst pleasant surroundings?

But it will probably be contended that the closing words of *section* 2074 of the *Code* 1915 being part of the definition of a boulevard, to wit, "and which may also be used for any other purpose not unlawful and not necessarily detrimental to the use of the road for vehicular travel," as well as *section* 2099, which provides that "Every Boulevard Corporation organized under the provisions of this Act shall have full power and authority to use that portion of its Boulevard, or strip of land, not devoted to the road for vehicular travel, for any other purpose that may be desired, provided, such purpose is not unlawful and is not such a purpose as requires a specific franchise, or specific authority, legislative or otherwise," etc., change the complexion of the statute in question and that by the above quoted portions of said statute the legislature attempts to delegate the power of eminent domain for uses that may be private.

It is respectfully submitted that the language in question is susceptible of no such construction. The language is substantially the same in each of the above quoted portions of the statute. When the legislature said that the boulevard may be used for

any other purpose not unlawful and in the same statute delegated
to corporations organized under it the power of eminent domain
for the purpose of establishing, constructing, operating and main-
taining such a boulevard, it necessarily follows that no purpose
but a public one could possibly have been contemplated or in-
tended by the legislature to be within the meaning of the words
"any other purpose not unlawful," because it would manifestly be
unlawful to delegate the power of eminent domain for other than
a public purpose.

In *Slingerland v. Newark*, 54 *N. J. L.* 62, the court in con-
sidering a statute granting the right to exercise the power of
eminent domain, said: "It is next objected that the attempt to
grant is inefficacious, because the uses for which land may be con-
demned are not specified. The words of the Act authorize the
condemnation of land 'for any lawful public use or purpose.'"

In *Barre Water Company*, 62 *Vt.* 27, it was contended that the
words "other purposes" authorized the corporation to exercise
the power of eminent domain for purposes that might be private.
The court said: "Statutes are to be construed according to the
intention of the legislature, and the presumption is that the legis-
lature does not intend to do that which it has no authority to do;
and as it has no authority to take private property for private use
without the consent of the owner, the presumption is that it did
not intend to authorize that to be done in this case, unless the
contrary unmistakably appears, supposing, for the present, that
the construction contended for would amount to such an at-
tempted authorization.  *  *  *  *Smith et al. v. Barre Water Co.*,
73 *Vt.* 310.

But it is understood from the plaintiff's petition, that he
contends that the statute in question is unconstitutional because
it does not expressly provide that the public shall be entitled to
the use of the boulevard and of the constituent elements thereof
or shall be entitled to the benefits to be derived from use of the
same.

Admitting that to constitute a public use the public must
have a legal right to the use of service for which the property is
taken, we quote from *Lewis on Eminent Domain* (3d Ed.) *Vol.* 1,

*Sec.* 313. *Nichols on the Power of Eminent Domain,* 388, (*Sec.* 320); see also, *Thoroughgood v. Georgetown Water Company,* 9 *Del. Ch.* 89, 77 *Atl.* 720; *Borden v. Irrigation Company,* 86 *S. W.* 11, (affirmed by the Supreme Court of the United States in 204 *U. S.* 667); *Rockingham, etc., v. Hobb,* 72 *N. H.* 531; *Railway Co. v. Northwestern Coal Company,* 51 *L. R. A.* 936; *Lake Koen Navigation Co. v. Klein,* 65 *Pac.* 684; *Renesselear v. Leopold,* 106 *Ind.* 29; *Turnpike Company v. News Company,* 43 *N. J. L.* 381.

The statute in question indicates clearly the legislative intent that the boulevard and all its elements should be for the use and accommodation of the public and that the public should have the right to such use or to the benefits thereof and the service to be supplied thereby.

It appears from the statute that all of the elements of the boulevard, indicating the uses to which it may be devoted, are specifically referred to and named "public utilities."

Boulevard corporations having received from the state a delegation of the power of eminent domain, become thereby *quasi* public corporations and subject to state regulation. *Tiedeman on State and Federal Control of Persons and Proprety, Vol.* 1, *page* 303.

The fact that the statute granted to boulevard corporations the right to exercise the power of eminent domain and the further fact that Coleman duPont Road, Incorporated, has filed its certificate of incorporation under this statute, to construct, maintain and operate a boulevard, as defined by it, clearly imposes upon Coleman duPont Road, Incorporated, the obligation to serve the public and guarantees to the public the right to the use or to the benefit of the use of the boulevard.

The necessity or expediency of exercising the power of eminent domain is neither a constitutional nor a judicial question. 1 *Lewis on Eminent Domain* (3d Ed.) 674, *Sec.* 369; *Tiedeman's* "*State and Federal Control of Persons and Property,*" 677; *Wilson v. Baltimore and Philadelphia Railroad Company,* 6 *Del. Ch.* 524; *Whiteman v. Railroad Company,* 2 *Harr.* 514; 15 *Cyc.* 629; *Boom Co. v. Patterson,* 98 *U. S.* 403; *Adirondack R. R. Co. v. N. Y.,* 176 *N. Y.* 335.

The width of the strip which may be appropriated for the construction of a boulevard, is a matter wholly within the discretion of the legislature and one which the courts cannot control, when the legislature has assumed to fix or limit the amount or quantity of land that may be taken.   2 *Lewis on Eminent Domain,* page 1067, *Sec.* 603 (*3d. Ed.*); *Mills on Eminent Domain* (*2d Ed.*), page 95. (*Sec.* 11); *McGehee on Due Process of Law,* 275; *Northern Pac. R. R. Co. v. Smith,* 171 *U. S.* 261; *Northern Pac. R. R. Co. v. Townsend,* 190 *U. S.* 267; *U. S. v. Gettysburg,* 160 *U. S.* 668; *Burlington, etc., Co. v. R. R. Co.,* 165 *U. S.* 370; *McKennon v. R. R. Co.,* 69 *Ark.* 104 (61 *S. W.* 383); *Stark v. R. R. Co.,* 43 *Ia.* 501; *Penna. R. R. Co. v. National Docks, etc.,* 57 *N. J. L.* 86; *Croley v. R. R. Co.,* 56 *S. W.* 615; *Coe v. Akin,* 61 *Fed.* 24; *Deboul v. R. R. Co.,* 111 *Ill.* 499; *R. R. Co. v. Pontiac,* 169 *Ill.* 155, *etc.*; *Hopkins v. R. R. Co.,* 97 *Ga.* 107; *Kemper v. Turnpike Company,* 11 *Ohio* 392; *Cheney v. Atlantic City, etc.,* 55 *N. J. L.* 235; *Carmody v. R. R. Co.,* 101 *Ill.* 69; *Crandall v. R. R. Co.,* 103 *Ia.* 684; *Burlington Gaslight Co. v. Railway Co.,* 165 *U. S.* 370; *United States v. Jones,* 109 *U. S.* 513, 519; *Bacmus v. Union Depot Co.,* 169 *U. S.* 557, 568; *Zircle v. Railway Co.,* 102 *Va.* 17 (cited approvingly in the *Hairston case, post.,* 208 *U. S.* 608).

So far is this principle carried that, even where the corporation is authorized, only, to condemn so much land as may be necessary, the courts have uniformly held that the question what and how much land is to be taken is primarily one for the determination of the condemning party, which can be reviewed only in the case if a clear and undoubted abuse of discretion taking form in an attempted excessive appropriation of private property.   *Boalsburg Water Co. v. State Water Co.,* 240 *Pa. St.* 198, 211; *Terre Haute etc., Ry. Co. v. Robbins et al.,* 247 *Ill.* 376, 381; *New York, etc. v. Long et al.,* 69 *Conn.* 424; *Hayford v. Bangor,* 102 *Me.* 340, 345.

Upon this record, the corporation is authorized to construct all of the utilities mentioned in the statute, it has incorporated for the purpose of doing so, and it sets up its intention of constructing them all which is attempted to be met only by the affidavit of the petitioner verifying his position in the State Supreme Court, that it has no definite plan in that connection.

The ruling in the *Clendaniel case* is in accordance with the decisions of all of the courts, state and federal.

The only remaining question for consideration, is whether the alleged uncertainty as to the time when the several utilities will in fact be constructed impairs the right to exercise the power of eminent domain.

In *Loomis v. Hartz*, 165 *Mich.*, 652, 656, the court said: "The exercise of such power is a matter entirely under the control of the legislature, subject to such restrictions as are found in the constitution. The necessity, occasion, time, and manner of its exercise are wholly legislative questions with the exception just stated." (Citations.)

While the statute authorizes the formation of boulevard corporations, with power to establish and build thereupon any one or more of the public utilities enumerated, the effect of this legislative declaration is, merely, to give the corporation, at the time of organizing, the right then to select which one or more of the utilities it will establish and maintain; and, having made the election, it must of course abide by it and perform and discharge all of the public duties thus assumed.

When Coleman duPont Road, Incorporated, filed its articles of association, it was under the necessity of making this election, in such articles, and it did so, and specified as its objects the construction, maintenance and operation of all the utilities named in the Act.

The time when each of these utilities is to be commenced, and is to be completed, and is to be put in operation, is a matter subject to judicial supervision, depending upon the necessities of the individual case, as presented to the court, and at the time of such presentation. That the several utilities must be constructed and put into operation within a reasonable time, under all of the circumstances, cannot be gainsaid, and if the corporation fails to do so, full and adequate relief can be had, by appropriate action on application to the court, either to compel it to discharge its corporate duties, or for forfeiture of one or more or all of its corporate franchises, including its existence, for nonuser or abuse.

That all of these utilities cannot be constructed simul-

taneously, at the same instant, and put into operation at once, is self-evident.  *State v. Railway & Power Co.*, 42 *Wash.* 632; *Chicago, etc., Railway Co. v. Heidenreich, Jr., et al.*, 254 *Ill.* 213, 236; *Kountz v. Morris Aqueduct*, 58 *N. J. Law.* 303, 307; *State et al v. Railway Company*, 57 *N. J. Law*, 86, 90; *Railway v. Peat*, 152 *Pa. St.*, 494; *Philadelphia v. Ward*, 174 *Pa. St.*, 45, 50; *Pittsburgh Junction Railway Company's Appeal*, 122 *Pa. St.* 511; *L. S. & M. S. R. Co. v. N. Y. C. & St. Louis R. Co.*, 8 *Fed. R.* 858; *Harlem River, etc., Co. v. Arnow et al.*, 21 *App. Div.* 636, 638; *St. Louis, etc., Railway Co. v. Foltz*, 52 *Fed.* 627, 633; *State v. Railway & Power Co.*, 42 *Wash.* 632; *Central Pacific Railway Co. v. Feldman*, 152 *Cal.* 303, 309; *Chicago, etc., Railroad Co. v. Chicago, etc.*, 255 *Ill.* 136.

That there is no uncertainty about the actual construction of the utilities in question, in view of the obligations assumed by the corporation in its articles of association, and the undoubted control of the courts over it to enforce the performance of those obligations, we submit, is clearly beyond dispute.  What uncertainty there is, if any, relates only to the time, and not to the fact of performance of the corporate obligations; and, even as to this, it is no greater than the exigencies of the case render imperatively necessary.

We submit that the uses for which it is proposed to construct the boulevard in question are clearly and unquestionably public; this being so, it is without the province of the court, in this case, to enquire further.  The writ of prohibition which is prayed for should be denied, the rule discharged and the plaintiff's petition dismissed, with costs.

*Per Curiam:*  Upon the authority of the case of *Clendaniel v. Conrad, et al*, 3 *Boyce* 549, the writ of prohibition prayed for is denied, the rule discharged, the petition dismissed, and the petitioner below ordered to pay costs.